<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN ZAPF and RICHARD ZAPF, | Civil Action No. 04-CV-3823 (SSB) |
| Plaintiffs, | |
| v. | **OPINION ON**<br>**MOTION TO TRANSFER**<br>**PURSUANT TO 28 U.S.C. § 1404(a)** |
| DENNIS BAMBER, DENNIS BAMBER INC. d/b/a THE WOODWIND AND THE BRASSWIND, and THE CHRISTMAN GROUP, | |
| Defendants. | |

**APPEARANCES:**

Matthew V. Delduca, Esq.
Christopher J. Kelly, Esq.
DECHERT LLP
997 Lenox Drive
Lawrenceville, NJ  08543

       Attorneys for Plaintiffs

Diana C. Manning, Esq.
Mark M. Tallmadge, Esq.
BRESSLER AMERY & ROSS
A Professional Corporation
325 Columbia Turnpike
Florham Park, NJ  07932

       Attorneys for Defendants

**BROTMAN, DISTRICT JUDGE.**

       Presently before the Court is a Motion to Transfer Venue to the Northern District of

Indiana pursuant to 28 U.S.C. § 1404, filed by Defendants, Dennis Bamber, Dennis Bamber, Inc.

d/b/a The Woodwind and The Brasswind ("DBI") and the Christman Group LLC.  Plaintiffs filed

suit in the New Jersey Superior Court for wrongful termination, breach of contract and

misconduct related to their termination from employment.  The action was removed by

Defendants to this Court on August 6, 2004 based upon diversity jurisdiction.  The Court

considered the submissions of the parties and heard oral argument on the motion to transfer on

May 10, 2005.

## I.    FACTUAL BACKGROUND.

Plaintiffs, Stephen Zapf ("Stephen") and Richard Zapf ("Richard"), became minority

shareholders in Dennis Bamber, Inc. ("DBI") as the result of a merger with it and their family

business, Zapf's Music Stores.  The company sells musical instruments and related products in

the retail market.  Plaintiffs became employed by DBI with Stephen becoming Vice President in

charge of sales, marketing and technology, and Richard becoming a Senior Manager of one of the

company's divisions.  Both Plaintiffs worked out of offices located in Cherry Hill, New Jersey.

(Pl.'s Opp. at 1; Compl. ¶¶ 13 & 14.)  Plaintiffs currently hold twenty-eight percent of the

company's stock between them.

To complete the transaction, the parties entered into four separate agreements:  a Merger

Agreement, an Employment Agreement for Stephen Zapf, an Employment Agreement for

Richard Zapf, and a Shareholders Agreement.  Each agreement was negotiated and bargained for

separately, each agreement containing separate and distinct clauses with respect to choice of law

and forum selection.  (Tr. at 27, l. 7-12; 29, l. 1-11, 18-20.)  Defendant Christman Group is not a

party to any of these four agreements.

The key issue to the litigation is whether the Plaintiffs were terminated for "just cause" under their respective Employment Agreements. The Employment Agreements each provide that termination of employment for either Plaintiff requires certain conditions to be met.[1] (*See* Employment Agreement § 5(b), Ex. 5 to Def.'s Mtn. to Transfer.) The parties disagree as to whether Plaintiffs' termination was for "just cause," or as Plaintiffs allege, in breach of their employment agreements, without just cause, and designed to force them to sell their shares of DBI at a reduced price. With respect to forum selection, the Shareholders Agreement only contains a provision for an arbitration remedy for those claims arising under the agreement. (Ex. 3 to Def.'s Mtn. to Transfer; Shareholders Agreement § 10.07). The Merger Agreement contains a forum selection clause.

In addition to the four agreements discussed above, Plaintiffs alleged claims related to other agreements entered into during the course of the business relationship. In 2003 and 2004, Plaintiffs received promotions which included stock options and other commitments from the company to pay additional bonuses and increases in salary. (Compl. ¶ 15.) The parties also entered into a Stock Option Agreement whereby Mr. Bamber agreed to sell eight percent of DBI's shares to the Plaintiffs. (Compl. ¶ 18.)

---

[1] Section 5(b) of each of the Employment Agreements states:

(b)     Just Cause.  Woodwind may terminate the employment of Zapf for Just Cause immediately upon providing written notice to Zapf.  For purposes of this Agreement, "Just Cause" means Zapf's (i) willful misconduct, (ii) gross negligence or gross neglect of duties, (iii) commission of a felony the nature of which is likely to adversely affect Woodwind, or (iv) material breach of, or material failure to perform, his duties in accordance with the terms and conditions of this Agreement, which breach or failure has not been cured by Zapf within fifteen (15) days after receipt of written notice of such breach or failure from Woodwind.  Zapf shall have an opportunity within five (5) business days after receiving notification of termination for Just Cause to meet with the President of Woodwind to discuss the reasons for Zapf's termination.

3

A large portion of the dispute revolves around whether Dennis Bamber promised to sell his interest in the business to the Plaintiffs upon his retirement.  To support their claim, Plaintiffs allege that before the merger of their companies, Mr. Bamber made representations to them that he was looking for a successor to take over the business upon his retirement and that they would enter into a succession plan, whereby he would sell them his interest in DBI upon his retirement. (Compl. ¶ 9, 10, 11 & 24.)  Plaintiffs also allege that the parties contemplated and entered into negotiations for the sale of Mr. Bamber's interest in the company to them in March of 2004. (Compl. ¶ 20; Tr. at 8 & 13, l. 12-16.)  Finally, Plaintiffs allege that a Purchase and Sale Agreement was entered into in March of 2004 whereby Plaintiffs would purchase Mr. Bamber's entire interest in DBI for slightly less than sixteen million dollars.  (Compl. ¶ 20.)  Defendants dispute the existence of the Purchase and Sale Agreement.  (Def.'s Reply at 2 n. 2.)  Plaintiffs also allege that they relied on the promises made by Mr. Bamber with respect to selling his part of the business.  For example, in April 2004, Plaintiffs obtained financing as required by the disputed Purchase and Sale Agreement.  (Compl. ¶ 25.)

In June 2004, Mr. Bamber informed the Plaintiffs that the Christman Group would act as his agent for consummating the sale of his interest in DBI.  (Compl. ¶ 26.)  At the request of Mr. Bamber, Stephen Zapf met with the Christman Group to discuss his plans for the business after the sale.  After that meeting, Mr. Bamber changed his  position, informing the Plaintiffs that he would not be selling his interest in the business to them after all.  (Compl. ¶ 27.)

Shortly after that meeting, Mr. Bamber requested that Stephen Zapf travel to Indiana to meet with him.  He suggested that the meeting was to discuss the sale of his portion of the business upon his retirement.  (Compl. ¶ 29.)  However, at that meeting, Mr. Bamber instead

4

terminated Plaintiffs' employment with DBI.  (*Id.*)  He memorialized their terminations after the

June 28, 2004 meeting by letters of the same date.  (Compl. ¶ 31.)

## II.     STANDARD ON MOTION TO TRANSFER.

Pursuant to Section 1404, an action may be transferred to a more convenient forum.  28

U.S.C. § 1404 (1996).  This provision requires that the transfer of venue be made to a district

where the action "might have been brought."  28 U.S.C. 1404(a).[2]  The trial court must first

examine, therefore, whether venue is appropriate in the alternative forum before deciding a

motion to transfer.  *Jacobs v. Cider Mill Farms*, 1999 U.S. Dist. LEXIS 21296, 4-5 (D.N.J.

1999).  *See also* 28 U.S.C. § 1391.

The venue provisions of Section 1391 apply to civil actions where jurisdiction is based

upon diversity.  28 U.S.C. § 1391 (2002).  Venue will be proper in "a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of the property that is the subject of the action is situated."  28 U.S.C. § 1391(a).  Under this

standard, it is possible for venue to be proper in more than one district, where it can be laid in

any district that satisfies the "substantial part" requirement.  *Cottman Trans. Sys., Inc. v.*

*Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

When a Plaintiff has laid proper venue, a court may then exercise its discretion to transfer

a case for the convenience of the parties and witnesses, and in the interest of justice.  28 U.S.C.

§ 1404.  It is well settled that a plaintiff's choice of forum should not be lightly disturbed.  *Shutte*

*v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

---

[2]28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any other district or division where it might have been brought."

The decision to transfer an action, however, remains within the discretion of the district court.  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988); *Plum Tree Inc. v. Stockment*, 488 F.2d 754 (3d Cir. 1973).  The moving party bears the burden of proof to show a need for transfer. *LG Elecs. v. First Int'l Computer*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001).[3] The burden of proof required to transfer venue is also lower than what would be required to dismiss the case. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).  As a result, federal courts have broader discretion to transfer an action than to dismiss under the doctrine of forum *non conveniens*.  *Id. Accord Solomon v. Cont'l Am. Life Ins.*, 472 F.2d 1043, 1045 (3d Cir. 1973).

In ruling on transfer motions, courts may balance many factors which affect the three considerations prescribed by statute of:  the convenience of the parties, convenience of the witnesses, and the interest of justice.  28 U.S.C. 1404.  Under the doctrine of *forum non conveniens*, the Supreme Court listed two categories of factors for deciding a motion to dismiss. *Gulf Oil v. Gilbert*, 330 U.S. 501 (1946).  Courts routinely utilize these *Gulf Oil* factors for guidance when transferring venue as well.  *See Sandvik, Inc. v. Cont'l Ins.*, 724 F. Supp. 303, 307-13 (D.N.J. 1989); *Siegel v. Homestore, Inc.*, 255 F. Supp. 2d 451 (E.D. Pa. 2003).  The transfer analysis must be flexible and made on the unique facts of each case.  *Piper Aircraft*, 454 U.S. at 249-50.

These *Gulf Oil* factors fall into two broad categories, where some of these factors will be given more weight than others.  The first category relates to the private interests of the parties to the litigation.  The factors which fall under private interests include:  (1) parties' choice of forum

---

[3]*See also Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995); *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 528-29 (D.N.J. 2000).

and applicable forum selection clauses, (2) where the actions giving rise to the claim arose, (3) convenience of the parties as shown by their physical and financial condition, (4) ease of access to sources of proof, location of evidence, (5) availability of compulsory process over unwilling witnesses, (6) obstacles to a fair trial and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*,  330 U.S. at 508.  *See also Jumara,* 55 F.3d at 879.

When a defendant alleges that a forum selection clause is applicable, the claims must arise under the agreement which contains the forum selection provision.  The forum selection clause must also be valid.  For a forum selection clause to be considered valid there should not have been any "fraud, influence, or overweening bargaining power."  *The Bremen v. Zapata Off-Shore Co.*, 40 U.S. 1 (1972).  Once a forum selection clause is determined to apply to the claims, the Third Circuit has held that the burden will shift back to Plaintiff to defend its choice of forum on a motion to transfer for those claims.  *Jumara*, 55 F.3d at 880.  Though the burden may shift for certain claims due to a forum selection clause, the ultimate balancing of factors and decision to transfer remain within the discretion of the court.

Another private interest factor that a court will consider is whether any arbitration remedies affect the claims.  For those claims arising under a valid arbitration clause, the Federal Arbitration Act applies.  9 U.S.C. §§ 1-16.  However, when a party disputes whether the parties intended for certain claims to receive an arbitration remedy, the court must engage in a review to ensure that the claims actually fall within the substantive scope of the agreement.  *Paine Webber,*

*Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990).[4]  Principles of contract law will control this question as to whether the parties intended to provide an arbitration remedy for a particular claim.  *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131 (3d Cir. 2004) (interpreting three agreements where two separate agreements referred back to the first but each contract required a different result with respect to arbitration).  Though contracting parties may provide for the arbitration of claims arising under an agreement, that provision cannot reach beyond the scope of the contract.  *See, e.g., Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149 (Sup. Ct. Del. 2002) (finding that fiduciary duty claims of minority stockholders were beyond the scope of the Underwriters Agreement through which they acquired their interests in the company).[5]  Thus, courts should not allow "the federal policy favoring arbitration . . . to override the will of the parties by giving the arbitration clause greater coverage" than they intended.  *Paine Webber*, 921 F.2d at 513 (*quoting Nat'l R.R. Passenger Corp. v. Boston & Me. Corp.*, 850 F.2d 756, 760-61 (D.C. Cir. 1988)).

Next, the second category of *Gulf Oil* factors consists of those which involve the public interests in administration of the courts and adjudication of cases.  The public interests factors include:  (1) enforceability of judgment, as evidenced by the location of the property in dispute;

---

[4] *See also Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) ("A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement.") (*citing PaineWebber*, 921 F.2d at 511); *AT&T Techs. v. Communs. Workers*, 475 U.S. 643, 649 (1986).

[5] *See also First Options, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes - but only those disputes - that the parties have agreed to submit to arbitration.")  *Accord Medtronic Ave. Inc. v. Cordis Corp.*, 367 F.3d 147 (3d Cir. 2004); *Bel-Ray Co. v. Chemrite*, 181 F.3d 435, 444 (3d Cir. 1999).

(2) local interests in deciding disputes at home; (3) administrative considerations arising between the fora; and (4) familiarity of the forum court with the applicable law. *Gulf Oil*, 330 U.S. at 508-09. *See also Seigel*, 255 F. Supp. 2d at 456.

The private and public interest factors will be considered with respect to Defendant's arguments in favor of transfer to the Northern District of Indiana.

## III.   ANALYSIS.

In the case at bar, the complaint contains fifteen counts which consist of more than thirty claims.  Defendants attempt to argue that clauses found under some of the agreements between some of the parties control most of the claims found within the complaint.

However, most of Plaintiffs claims do not arise under any agreements or forum selection clauses.  The greater part of the dispute concerns an alleged agreement to sell the business, tortious interference with that agreement, conspiracy and fraud.  For any claims that might fall under the agreements cited, they merely weigh in as factors in an analysis which considers a number of public and private interests.  A thorough evaluation of all of the factors affecting the decision to transfer will show that the balance favors leaving the action in the District of New Jersey.

Foremost, Plaintiffs allege claims arising under a Purchase and Sale Agreement and oral representations made by Defendant Bamber with respect to sale of the business.  Plaintiffs allege that Defendant Bamber promised to sell his interest in the business to them, negotiated a Purchase and Sale Agreement with them, and made oral representations to them upon which they relied.  These claims regarding the promise to sell the business do not arise under the agreements cited by Defendants.  Instead, the agreements evidence whether a promise to sell the business

9

was made.

Plaintiffs further allege that DBI provided them with Stock Option Agreements which have been breached.  The Stock Option Agreements were entered into separately and apart from the formation of the business and merger agreements.  Again, none of these claims arise under any forum selection clauses.

Next, Defendant Christman Group is not a party to any of the four agreements discussed in the motion to transfer, nor is it a party to any of the additional agreements found within the complaint.  None of the claims against Defendant Christman Group are affected by any forum selection clauses, leaving only the remaining private and public interest factors to affect these claims for the decision to transfer.

Thus, upon a review of the full range of factors to consider on a motion to transfer, it will be apparent that the balance favors leaving this action in Plaintiff's chosen forum of the District of New Jersey.

A.      **Private Interest Factors.**

Despite the number of private interest factors involved in a decision to transfer, Defendants rely upon four agreements in an attempt to suggest that the parties agreed to a particular forum.  The Defendants group four of the agreements involved in the dispute together, but each of those agreements contains a different set of clauses to address forum selection or choice of law.  Each of those agreements was separately negotiated and the venue provisions contained in each agreement were separately negotiated as well.  (Tr. at 27, l. 7-12; 29, l. 1-11, 18-20.)  Finally, these provisions for forum selection merely affect two of the factors within a balancing of many factors in the determination on transfer.  Ultimately, the convenience of

parties and witnesses, and the interest of justice shall prevail.

       1.     *Parties' Choice of Forum.*

      For a transfer of venue based upon a contractual agreement as to the parties' choice of forum, a court must first consider which claims arise under the agreement.  Claims which arise under an agreement necessarily will turn on an interpretation of that agreement.  In addition, in circumstances where multiple agreements are alleged to control the claims, the court must consider the degree of separation between the agreements.  The question asks whether the parties intended for all of the agreements to be treated the same with respect to disputes and venue, or whether each agreement works separately.  Factors to be considered with respect to the degree of separation between multiple agreements include:  whether the terms of the contracts were bargained for separately and meant to stand alone; whether the provisions of the agreements interlock; whether the clauses providing for venue conflict with each other, or contain identical language; whether the contracts were negotiated at different points in time; and the purposes behind each agreement.  These factors permit a court to determine which claims arise under the individual agreements and the clauses found within them.

      Only the Merger Agreement contains a forum selection clause, which indicates the parties intentions with respect to claims arising under that agreement.  However, none of the claims to this litigation allege any breach of or failure to perform under the Merger Agreement.  The purpose of the Merger Agreement is to define the terms of and implement the merger of the companies and its terms are not under dispute.  Instead, the Merger Agreement merely evidences the intentions of the parties with respect to other claims to the litigation.

      Similarly, for a claim to arise under the Shareholders Agreement, that claim must consist

of a dispute over a sale of stock.  The purpose of the Shareholders Agreement is to outline the

rights of the shareholders and to protect the company from a sale of control to outside interests.

The Shareholders Agreement controls the sale of shares upon events that require such sales, or at

any time when a shareholder seeks to sell his shares voluntarily.  The Shareholders Agreement

provides an arbitration remedy for disputes over the sale of shares.  It is premature to address

whether any claims are arbitrable when no sales of shares are currently contemplated.  At such

time that a sale of shares is triggered or sought and disputed, then those claims relating to the sale

of shares will be arbitrable pursuant to the agreement's provision.

In summary, the Plaintiffs choice of forum prevails when no valid forum selection clause

controls the dispute.  This factor weighs against transfer of the action to the Northern District of

Indiana.

   2.      *Location of the Actions which Gave Rise to the Claims.*

Many of the actions which lead to the institution of this litigation occurred in New Jersey.

Most of the negotiations for the merger transaction were directed towards New Jersey by

telephone conversations between the parties.  Under the employment agreements, Plaintiffs were

employed in New Jersey.  The alleged detrimental reliance on misrepresentations made by

Dennis Bamber caused Plaintiffs to relinquish control of their business which was located in

New Jersey.  Finally, Plaintiffs' work history occurred in Defendant DBI's New Jersey offices.

As a result, the location of the actions which gave rise to the claims favors the Plaintiffs' choice

of forum.

   3.      *Convenience of the Parties.*

The balance of the convenience of the parties favors venue in New Jersey.  The Plaintiffs

reside in New Jersey.  Defendant DBI has large offices and many employees in Cherry Hill, New

Jersey and a warehouse facility in Pennsauken, New Jersey.  Defendant Dennis Bamber also

travels to DBI's offices in New Jersey.  Plaintiffs, on the other hand, have little contact with the

state of Indiana and are less financially able to travel.  Defendant Christman Group has its

principal place of business in Illinois, transacting business with DBI in Indiana and with the

Zapfs.  The convenience of the parties also favors Plaintiffs' choice of forum.

        4.      *Location of Evidence and Witnesses.*

The primary witness, Dennis Yoder, makes trips to New Jersey on behalf of Defendant

DBI and is designated as DBI's registered agent for service of process in New Jersey.  Defendant

Dennis Bamber also travels to New Jersey as part of his business.  Many of the records related to

Plaintiffs employment with DBI are located in New Jersey at the Cherry Hill offices in which

they worked.  Though some of the evidence will be located at DBI's offices in Indiana, the

company is subject to personal jurisdiction in New Jersey.  That DBI might have to produce

business records from its Indiana offices is insufficient to overcome Plaintiffs' choice of forum

with respect to this factor.  The location of evidence and witnesses does not favor transfer.

**B.**    **Public Interest Factors.**

The public interest factors largely weigh in favor of Plaintiffs' choice of forum.

        1.      *Location of Property in Dispute.*

A judgement would be enforceable in either Indiana or New Jersey.  Further, Plaintiffs

worked out of the Cherry Hill, New Jersey offices of Defendant DBI and, before the merger,

owned a New Jersey business.  A large portion of the dispute centers around Plaintiffs' family

business and their employment with DBI and were located in New Jersey.  On the other hand,

DBI is primarily located in Indiana.  The location of the property does not go against venue in New Jersey.

      2.     *Administrative Considerations Between the Fora.*

     The court congestion in the respective jurisdictions may be compared by number of filings per judge and the average amount of time from filing to disposition.  *See, e.g., Jumara*, 55 F.3d at 879.  Fewer cases per judge are filed in New Jersey than the Northern District of Indiana. In addition, civil cases are disposed of more quickly in the District of New Jersey as well. Therefore, the administrative considerations favor Plaintiffs' choice of forum.  (Kelly Cert. at ¶ 4, Ex. B).  Defendants mention a lawsuit which is pending in the Northern District of Indiana. (Case No. 04-cv-539).  However, that action was filed after this action was filed in New Jersey and the general rule is to transfer cases to the forum where the first action was filed.  Therefore, the administrative considerations favor the Plaintiffs' choice of forum.

      3.     *Familiarity of the Forum Court with the Applicable Law.*

     Part of the dispute underlying the litigation centers around the termination of Plaintiffs' employment with DBI.  The Employment Agreements between Plaintiffs and DBI contain choice of law clauses but do not contain any other venue provisions.  The parties considered but did not include forum selection clauses or arbitration clauses for these two agreements.  The choice of law clauses merely specify that Indiana law should be utilized to interpret the agreements.

     Only one of the claims, that the Plaintiffs' termination was not for "just cause," will require interpretation of another state's law.  The majority of the claims to the litigation revolve around fraud, conspiracy and whether there was an agreement to sell the business.  "While familiarity of the forum court with the applicable law is a consideration, it is not enough that a

court might have to apply another jurisdiction's law." *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 429 (D.N.J. 2000) (Brotman, J.)  Therefore, the familiarity of the forum court with the applicable law does not weigh in favor of transfer.

## IV.    CONCLUSION.

After considering the arguments of the parties and weighing all of the factors in favor of transfer, the court finds that the balance favors the Plaintiffs' choice of forum.  The action will remain in the District Court for the District of New Jersey.  Defendants' Motion to Transfer Venue is denied and the court will enter an appropriate Order.

**Dated:        August 26, 2005**

_____
**HONORABLE STANLEY S. BROTMAN
UNITED STATES DISTRICT JUDGE**

15